Julian D. Jensen Bar No. 1679
Nathan D. Miller Bar No. 10836
Jensen, Duffin & Dibb, LLC
Attorneys for Plaintiff
311 South State Street, Suite 380
Salt Lake City, Utah 84111
Telephone (801) 531-6600

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR
## THE DISTRICT OF UTAH

### (Central Division)

| | |
|---|---|
| ROGER LANDRESS;<br>TEXAS SABAL, INC., a Nevada<br>Corporation; and WILLIAM POWELL,<br><br>    Plaintiffs,<br><br>vs.<br><br>HIKO BELL MINING & OIL CO.,<br>a Utah corporation; CRAIG CALDWELL,<br>a director, JAMES C. CALDWELL,<br>a director, and ROBERT E. COVINGTON,<br>a director,<br><br>    Defendants. | VERIFIED<br>SHAREHOLDERS' DERIVATIVE<br>COMPLAINT<br><br>WITH<br> JURY TRIAL DEMAND<br><br>Judge David Sam<br>DECK TYPE: Civil<br>DATE STAMP: 08/31/2006 @ 14:11:53<br>CASE NUMBER:  2:06CV00734  DS |

## JURISDICTION AND PARTIES

*Diversity Jurisdiction*

1.    Plaintiff, Roger Landress, is a resident of the jurisdiction of Texas and

shareholder in the defendant, Hiko Bell Mining & Oil Co., Inc. ("Hiko Bell") and has been such

at all times material to the within cause of action.

2.      Plaintiff, Texas Sabal, Inc., is a Nevada corporation having its principal place of business in Alpine, Texas and has been a Texas based corporation at all times relevant to this complaint and is a shareholder of Hiko Bell. Its President is Mr. Bailey Landress.

3.      Plaintiff, Mr. William Powell, is a resident of the State of New York and has been such at all times relevant to this complaint and is a shareholder of Hiko Bell.

4.      The corporate defendant, Hiko Bell Mining & Oil Co. ("Hiko Bell" or the "Company") is incorporated in the State of Utah and has its principal place of business in Uintah County, Utah. Hiko Bell is also believed to act as its own transfer agent.

5.      Each of the individual named defendants is believed to be a resident of the State of Utah, County of Uintah, and have been such at all times material to this cause of action. The amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

6.      Based upon the foregoing, there is complete diversity of citizenship between the parties, the required jurisdictional amount is alleged and Diversity Jurisdiction is appropriate pursuant to 28 U.S.C. §1331, together with principals of ancillary and pendant jurisdiction as to the stated common law or state law claims.

7.      Venue of this action is proper in this district under 28 U.S.C. §1391(a) as this is the district in which all defendants reside.

*Alternative Federal Question Jurisdiction*

8.      Plaintiffs replead and incorporate by this reference the allegations of paragraph 1 through 7 as previously set-out.

9.      Plaintiffs assert a cause of action against defendants arising out of 15 U.S.C. §78(b) (Section 10b), and Rule 10b-5 promulgated pursuant thereto, involving a fraud, scheme or

artifice to defraud, or fraudulent statement or omission related to the purchase or sale of a security engaged in or advanced by one or more of the defendants.

10.     Venue is proper under federal question jurisdiction pursuant to 1391(b) as all of the defendants reside in this jurisdiction.

*Rule 23.1 and Statutory Pleading Requirements*

11.     All common law claims or state law violations are properly pendant to the federal question jurisdiction as they arose out of the same nexus of operative facts.

12.     Pursuant to the requirements of Rule 23.1 of the Federal Rules of Civil Procedure ("FRCP") and Utah Code Annotated §16-10a-740 (to the extent this court does not determine Rule 23.1 to be the exclusive procedural basis for a federal derivative claim as presently asserted by these plaintiffs).  Plaintiffs assert they are and remain shareholders of the corporate defendant at essentially all times that the causes of action alleged herein arose, or are an appropriate transferee of those shares.

13.     Pursuant to the provisions of FRCP Rule 23.1, each plaintiff alleges this action is not brought to confer jurisdiction on a court of the United States which it would not otherwise have.

14.     Plaintiffs allege that they, through Roger Landress, at various times, have repeatedly made demands upon management of Hiko Bell, as asserted in this complaint, and have asked for remedial actions to be taken by them to correct the errors or omissions complained of, but such demands have been denied or ignored by existing management as more fully alleged herein.  It is also alleged that for years these plaintiff/shareholders requested a shareholder meeting and were denied such requests until a state court required a shareholder

meeting.  Further, Hiko Bell management still has refused to deliver a current list of shareholders as required under the foregoing court ruling.

15.     Specifically, plaintiff, Roger Landress, further asserts that he was required in 2005 to file an action in the Eighth District Court for Uintah County, State of Utah, to compel, under Utah law, the holding of a shareholders meeting in 2005 and the release of the Hiko Bell shareholder list.  The meeting was not held until 2006 and the shareholder list has never been supplied as ordered by the Court, nor has plaintiff, Roger Landress, ever received any response to a subsequent request of his counsel for minutes of the 2006 shareholder meeting and related matters.  As a consequence, plaintiffs believe that a further requests for remedial actions addressed to the present Board of Hiko Bell pursuant to FRCP Rule 23.1 are not feasible and should not be required based upon the intransigence of the corporate management at all times previously and the continuing harm to the Company.

16.     As to the requirements of Utah Code Annotated §16-10a-740, as applicable to federal derivative actions, the plaintiffs represent they believe such requirement to be procedural and therefore superceded by FRCP Rule 23.1.  To any extent applicable, plaintiffs have given a formal notice of the grievances contained in this complaint and believe that any waiting period prior to the filing of this complaint should be waived as Hiko Bell has not affirmatively responded to any prior proposals when asked for specific remedial relief.  The plaintiff, Roger Landress, reports and avers that he received no satisfactory response from the Board as to the remedial proposals set-out in the attached and incorporated letters from plaintiffs' counsel, Exhibit A.  In the interim, plaintiffs believe ongoing and irreparable damage is being done to Hiko Bell by its current management as set-out herein.

17.     As a result, plaintiffs allege that further demands for self-directed remedial action to Hiko Bell management as to the issues alleged in this complaint are not feasible, nor should further demands be required by these plaintiffs to satisfy the requirements of FRCP Rule 23.1, Utah law, or otherwise.

## GENERAL FACTUAL ALLEGATIONS

18.     Defendant, Hiko Bell Mining & Oil Co., is a Utah corporation organized in approximately 1942 and has been in continuous existence since such date as a Utah public company.  Hereafter the defendant may be referred to as "defendant," "Hiko Bell," the "Company," or "defendant corporation."

19.     Hiko Bell is generally engaged in the extraction and marketing of hydrocarbons, such as natural gas and crude oil and other minerals, and has been such at all times material to this complaint.

20.     The three present directors, named as individual defendants above, have been affiliated with the Company as follows: Craig Caldwell, 1964; Bud Covington, 1964; James C. Caldwell, 1988.

21.     Plaintiffs are all shareholders of Hiko Bell and have been such since 2003 in the case of Landress and Texas Sabal and since 1982 as to Powell.  Plaintiffs are bringing the within cause of action in a representative capacity for and on behalf of the Company as a shareholder derivative action.  The specific claims or causes of actions of the plaintiffs, for and on behalf of the Company, arise our of a common nexus of operative facts which the plaintiffs have attempted to set-out more completely under this section of the complaint captioned "general factual allegations."

22.     Hiko Bell is a publicly traded company which trades either on the NASD sponsored "pink sheets" or Electronic Bulletin Board (EBB), but is not traded on any national exchange or quotation system.

23.     Hiko Bell is what is generally characterized as a "penny stock" and has had a very limited trading range in a thinly traded market for prices below $5.00 per share at all times applicable to this complaint.

24.     The general business office of the defendant corporation is located in Vernal, Utah and has been at all times material to the within cause of action.

25.     Hiko Bell has not been consistent in making the required securities report filings under rules promulgated by the Securities & Exchange Commission (SEC) pursuant to the Securities Exchange Act of 1934 ('34 Act), as more particularly set-out in this complaint.  The required reports were frequently omitted to be filed, or were not filed in a timely or complete manner by defendant corporation.  These reports would include, though are not necessarily limited to, 10-KSB Reports, 10-QSB Reports, 8-K Reports and Forms 3, 4 and 5 for reporting sharehold positions and sales by management.

26.     The president, and every other officer of the Company, has consistently failed to communicate significant and important information to shareholders or the marketplace concerning Hiko Bell and has attempted to conceal various improper transactions or adverse information as more particularly set-out in this complaint.

27.     The management of Hiko Bell, as part of the ongoing attempt to conceal adverse information, has failed to disclose important information, has not routinely held shareholder meetings and has not voluntarily held a shareholder meeting since approximately 1968, prior to the court mandated 2006 meeting.  The last held meeting in 2006, occurred only after being

ordered by a court of general jurisdiction in the state of Utah based upon a shareholder application requiring the court to Order a public meeting of shareholders.  The court further ordered Hiko Bell to make a current shareholder list available to plaintiff, Roger Landress, concerning which Order it failed to comply.

28.      One or more of the above-named individual defendants is believed to hold a sharehold, beneficial and/or economic interest in a small oil company known as Blue Bell Oil Company ("Blue Bell"), or substantially similar designation, and has caused Hiko Bell to be engaged in various transactions with such entity without public disclosure, independent board review and has caused Hiko Bell to transfer or receive assets from or to Blue Bell without adequate or full consideration, as more particularly set-out herein and as will be more particularly described pursuant to discovery.

29.      At some period of time in the late 1997s, or as otherwise proven pursuant to discovery, various officers of Hiko Bell caused to be transferred up to two acres of a storage yard with buildings and other improvements belonging to Hiko Bell and located in or around Vernal, Utah to Blue Bell or others in a transaction which was not approved by an independent Board of Hiko Bell, which was not publicly described to shareholders, which may have involved a substantial transfer of company assets in violation of Utah law without shareholder approval, and which was completed for inadequate consideration.  It is also believed and assessed to have benefited one or more of the current directors of Hiko Bell.  The current management of Hiko Bell has attempted to conceal the details of this transaction, which claims could not have been known or asserted prior to this time by the plaintiffs.  The actual conveyance described by this paragraph is a matter of record at Book 640, Page 579 in the Uintah County Recorder's Office.

30.     At some period of time in late 2005, or as otherwise proven pursuant to discovery, various officers of Hiko Bell received funds for the sale of oil and gas leases in Colorado from Blue Bell and/or others to Hiko Bell which transactions were not approved by an independent board and which were not publicly described to Hiko Bell's shareholders.  As a result, there was a substantial transfer of Company assets in violation of Utah law without shareholder notice, vote or dissenting shareholder rights, and which transaction was completed for inadequate consideration and the details of which the current management of Hiko Bell have attempted to conceal and which could not have been known or asserted prior to this time by the plaintiffs.

31.     At some time during the calendar year 2005, current management of Hiko Bell is also believed to have engaged in a complex series of transactions or assignments of some of its Utah and Colorado oil and gas leases out to or from, Thurston Energy and/or Blue Bell, for share consideration in which one or more of the named individual defendants received an additional cash consideration that was not paid to the defendant corporation, but was instead retained and realized directly by one or more of the three individual directors.  Upon information and belief, it is believed this transaction may have involved over $500,000 missing from Hiko Bell's treasury.

32.     At some time during calendar year 2005, management of the defendant corporation has disposed of one of the remaining valuable assets of defendant corporation at a discounted value to encourage similar transactions with Blue Bell or others for inadequate or improper consideration and has attempted to conceal or knowingly failed to disclose the terms of this transaction or material contract to shareholders or in any SEC filing.

33.     Plaintiffs, Roger Landress and Texas Sabal , assert that commencing in the late 1990s and continuing through 2005, the present management of Hiko Bell has, at various times, cancelled various sharehold positions of shareholders, refused to acknowledge and process

8

private sales or assignments without just cause and instituted a reverse split all without proper

cause or procedure; and, at times, without notice to such shareholders.  As a result, current Hiko

Bell management has thereby, breached various fiduciary duties and appropriated property

belonging to the Hiko Bell shareholders without reasonable basis, compensation or just cause.  It

is further asserted that management has attempted to conceal or failed to disclose records which

would evidence such improper stock transactions in the shares of Hiko Bell upon proper

shareholder requests.

      34.     During the period from the 1980s to the present time, the present management of

the Company has engaged in share transactions of Hiko Bell's stock for less than adequate

consideration and has sold, assigned or exchanged various other properties of the Company for

shares without adequate consideration and has failed to properly disclose and has concealed such

transactions to the present date.  Further, it is alleged that such transactions, even if properly

supported by consideration not presently disclosed, were not "arms-length" and were not

properly and/or timely reported as an SEC filing requirement by current management of the

Company, nor approved by any independent decision of the Hiko Bell Board of Directors.  To

the extent involving a material transfer of assets outside the regular course of business, current

Hiko Bell management failed to obtain shareholder approval or provide dissenting shareholder

rights.

**FIRST CAUSE OF ACTION**

**(10b-5 Violations – Securities Fraud)**

      35.     Plaintiffs replead and incorporate by this reference paragraphs 1 through 17 of the

Parties and Jurisdictional allegations and paragraphs 18 through 34 of the General Factual

Allegations as if fully set-out herein.

36.     Based upon the foregoing factual assertions, a federal cause of action exists by the defendant corporation in a shareholders' derivative suit against the existing three individuals named as directors for engaging in a fraud, constructive fraud, scheme or artifice to defraud, fraudulent statements or omissions, all arising out of, or related to, the purchase or sale of the Company's securities in violation of 15 U.S.C. §10(b) and Rule 10b-5 promulgated pursuant thereto.

37.     Plaintiffs allege that each of the wrongful and fraudulent acts or omissions described in this cause of action required and/or were furthered by the use of interstate telephones, mails and electronic filings to advance, complete or conceal such wrongful acts or omissions.

38.     As to specific allegations arising out of violation of Rule 10b-5, as based upon the foregoing general factual allegations, the plaintiffs assert more particularly as follows:

    a.     The individual defendants engaged in Section 10b and Rule 10b-5 violations by allowing shares to be traded on a public market, Electronic Bulletin Board or Pink Sheets, or by trading their shares when, at the time of any such sale, they were withholding or refusing to disclose material information concerning the Company's financials, risk factors, management, material events and transactions and transfers of property; including transactions with Blue Bell Oil Company, or various other related or unrelated third parties.  These acts and omissions constitute a 10b-5 fraud, scheme and artifice to defraud, or fraudulent inducement.

    b.     In acquiring leases in Colorado, as alleged above without public information, the individual defendants engaged in Section 10b and Rule 10b-5 violations by allowing their shares to be sold on a public market, Electronic Bulletin Board or Pink

Sheets, when at the time of any such sale they were withholding or refusing to disclose material information concerning the Company's transactions and transfers of property or other valuable interest with or in Blue Bell or various other related or unrelated third parties. These acts or omissions constitute a fraudulent act or omission related to the sale of the company's shares.

      c.      Plaintiffs, Roger Landress and Texas Sabal, assert that in canceling shares of the Company or refusing to recognize transfers of Hiko Bell held by certain public shareholders without notice or cause, the individual defendants engaged in Section 10b and Rule 10b-5 violations by fraudulently appropriating or improperly deferring sales of their shares or proceeds through a scheme or artifice to defraud. These acts or omissions constitute a scheme or artifice to defraud.

      d.      By engaging in the transfer of corporate assets from or to management without independent board review or current public information as to such transactions, the individual defendants engaged in Section 10b and Rule 10b-5 violations by allowing their shares to be sold on a public market, Electronic Bulletin Board or Pink Sheets, when at the time of any such sale they were withholding or refusing to disclose material information concerning the Company's material transactions and transfers of property or other necessary information as set-out in subparagraph (a) above. Such acts or omissions constitute a 10b-5 fraud in the sale of a security by withholding material information and by engaging in a scheme or artifice to defraud.

      e.      In disposing of principal assets of Hiko Bell without required shareholder approval, dissenting shareholder rights, and without required independent board review or current public knowledge or information (paragraph 28), the individual defendants

engaged in Section 10(b) and Rule 10b-5 violations by buying or selling shares or allowing others to buy or sell Hiko Bell shares on a public market, Electronic Bulletin Board or Pink Sheets, when at the time of any such sale they were withholding or refusing to disclose material information concerning the Company's transactions and transfers of property or other valuable interest with Blue Bell or various other related or unrelated third parties. Such acts or omissions constitute a 10b-5 fraud in the sale of a security by withholding material information and by engaging in a scheme or artifice to defraud.

       f.      At some time during calendar year 2005, or as otherwise proven, current management of Hiko Bell engaged in a series of complex transactions involving assets, stock leases and claims of Hiko Bell with Thurston Energy, Blue Bell or others in which one or more of the named individual defendants received additional cash assets and were unjustly enriched with corporate assets. These transactions constitute a scheme or artifice to defraud the corporation and its shareholders related to its stock transactions and constitute a claim under Rule 10b-5.

       g.      At some time during calendar year 2005, or as otherwise proven, Hiko Bell was caused by management to dispose of corporate assets and/or shares at a discounted value to Blue Bell, or other persons and entities, and have attempted to conceal such transactions. These transactions, including any concealment, constitute a scheme or artifice to defraud along with the failure to disclose, which also constitutes a fraudulent omission to disclose, acts related to the sale of Hiko Bell's stock all in violation of Rule 10b-5.

h.       Plaintiffs, Roger Landress and Texas Sabal, assert that commencing in the late 1990s and continuing to date, present management of Hiko Bell has cancelled or attempted to cancel, or failed to count for voting purposes, or refused transfers of stock in Hiko Bell between shareholders, primarily Mr. Landress and associated entities, to punish critics of the Company and to enhance management's control or ownership all in violation of Rule 10b-5.

i.       During the 1980s to the present date, or as subsequently proven, the current management has engaged, on one or more occasions, in the sale, issuance, or other disposition of Hiko Bell's stock, for less than adequate consideration and has sold, assigned or disposed of corporate assets or interest for less than adequate consideration constituting a fraud related to the purchase or sale of the Company's stock by others in the marketplace all in violation of Rule 10b-5.  Defendants have further attempted to conceal such facts.

j.       In refusing to hold public meetings or file required public information under the SEC reporting requirements with knowledge that Hiko Bell's shares were being traded in a public market, the individual defendants engaged in Section 10b or Rule 10b-5 violations by allowing the Company's shares to be traded on a public market, Electronic Bulletin Board or Pink Sheets, when at the time of any such sale they were knowingly withholding or refusing to disclose material information concerning the Company's transactions and transfers of property or other necessary information as detailed in subparagraph (a) above.  Such acts or omissions constitute a 10b-5 fraud in the sale of a security by withholding material information and by engaging in a scheme or artifice to defraud.

k.      At various times, management has caused the Company's shares to be issued without registration or a recognized exemption or sufficient information in violation of federal and state securities laws and such acts constitute a separate and distinct Section 10b or Rule 10b-5 violation.  Such acts or omissions constitute a 10b-5 fraud in the sale of a security by withholding material information and by engaging in a scheme or artifice to defraud.

l.      Various management violations of Rule 10b-5 have occurred by engaging in insider trading transactions on one or more occasions by employing material information in the purchase or sale of Hiko Bell stock without making public such information.  Such acts or omissions constitute a 10b-5 fraud in the sale of a security by withholding material information and by engaging in a scheme or artifice to defraud.

39.      Each of the foregoing acts or omissions was done knowingly and willfully for deceptive purposes by the current management of the Company, or was done with reckless disregard for the truth, thereby creating the required scienter to prove a 10b-5 action.

40.      Plaintiffs reserve the right to amend and expand this cause of action as further or additional Section 10b or Rule 10b-5 violations are discovered and determined pursuant to discovery in this proceeding.

41.      In addition to the claim of plaintiffs to assert the following pendant common or state law violations under diversity jurisdiction, plaintiffs also assert that such claims are properly pendant to and arise out of the same nexus of factual transactions as the Section 10b or Rule 10b-5 violations as pendant state law claims to a federal cause of action.

42.      Plaintiffs assert that as a direct and proximate result of the acts or omissions of the individual defendants in violation of Section 10b and Rule 10b-5, as alleged in this cause of

action, the Company has been damaged and the present management has acted in a willfully or recklessly wrongful and improper manner, and that plaintiffs are entitled to prove and recover damages against present management to be paid to the corporate defendant for compensation for wrongful acts in such amount as may be subsequently proven.

43.     Plaintiffs further assert and aver that plaintiffs should be entitled to injunctive relief restraining and prohibiting the current management of Hiko Bell, so long as they remain directors or officers, from engaging in any further wrongful acts and omissions or any transaction in stock or assets without prior notice to shareholders, SEC filings, and voting procedures as required by the Court; and requiring them to promptly and fully comply with all SEC reporting requirements and Utah law, including disclosure of material contracts while they remain in office.

44.     Plaintiffs are entitled to recover under this cause of action all court costs and reasonable attorney fees.

45.     Plaintiffs reserve the right to amend or supplement this cause of action as further discovery is completed.

## SECOND CAUSE OF ACTION

### (Constructive Fraud/Appropriation and/or Conversion)

46.     Plaintiffs replead and incorporate by this reference paragraphs 1 through 17 of the Parties and Jurisdictional allegations, paragraphs 18 through 34 of the General Factual Allegations and paragraphs 35 through 45 of the First Cause of Action as if fully set-out herein.

47.     One or more of the named individual director defendants, on or about the dates previously alleged, did commit a constructive fraud and/or conversion and/or illegal appropriation of corporate assets and opportunities through:

a. Selling assets of Hiko Bell to a related entity, Blue Bell, or other entities, person or persons as subsequently determined, with or without adequate consideration, and without first obtaining approval and authority from an independent majority of the Hiko Board of Directors or others having an unrelated interest in the transaction.

b. For transferring Hiko Bell assets to or from Blue Bell or other associated entities or persons without adequate considerations, as previously alleged or as may be subsequently proven.

c. Acquiring leases for and on behalf of Blue Bell or other associated entities or persons in the oil and gas industry in violation of preserving the corporate opportunities to Hiko Bell.

d. Canceling or refusing to recognize transfers of shares by the public shareholders in Hiko Bell without cause or notice and thereby increasing the relative percentage of ownership of the three directors.

e. Issuing or receiving shares at less than or greater than the market price for such shares in private stock or asset transactions involving, directly or indirectly, shares of Hiko Bell.

f. Transferring Hiko Bell assets for less than adequate consideration.

g. Transferring substantial assets of the corporation without required shareholder approval, notice and dissenter's rights.

h. Concealing and/or failing to properly notice or disclose one or more of the foregoing wrongful acts or omissions.

48.     As a direct and proximate result of one or more of the foregoing or other proven wrongful or fraudulent transactions or omissions, Hiko Bell has suffered damage and loss through the action of its present directors in an amount to be subsequently proven at trial.

49.     As to any constructive fraud or fraud allegation, other shareholders and Hiko Bell would have reasonably relied on the actions of management to be in their best interest; would have suffered as a result of such wrongful acts of omissions without knowledge or notice of such wrongful acts or omissions; and, thereby would have acted reasonably in their own interest under the circumstances in participating in or failing to object to such transactions.

50.     The foregoing actions were done willfully and intentionally and constitute a type of intentional wrongdoing for which the Company should be awarded exemplary or punitive damages in addition to actual losses, as subsequently determined by the trier of fact against the individual defendants.

51.     Plaintiffs reserve the right to amend or supplement this cause of action as subsequent discovery may be completed.

## THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty/Negligence)

52.     Plaintiffs replead and incorporate by this reference paragraphs 1 through 17 of the Parties and Jurisdictional allegations, paragraphs 18 through 34 of the General Factual Allegations and paragraphs 35 through 45 of the First Cause of Action and paragraphs 46 through 51 of the Second Cause of Action as if fully set-out herein.

53.     All directors of Hiko Bell, collectively and individually, owe a fiduciary duty to the corporation and its shareholders.

54.     Based upon the general factual allegations set-out above, the present individual defendants acting as officers and directors of Hiko Bell violated their fiduciary duty to the Company and other shareholders as a result of the following acts or omissions:

   a.     By acquiring and profiting from opportunities in the oil and gas industry individually, through Blue Bell or other entities in competition with Hiko Bell at the time when Hiko Bell was engaged in oil and gas acquisition and production, thereby constituting a violation of corporate opportunities;

   b.     By engaging on one or more occasions, as set-out in the general factual allegations, in acquiring or disposing assets of the corporation at less than a fair market value;

   c.     By engaging in the transfer or acquisition of assets from related party entities or persons without independent board review or approval, which act constitutes a breach of fiduciary duty to the corporation;

   d.     By engaging in insider trading transactions based upon information which was not publicly disclosed;

   e.     By engaging in transactions to cancel or rescind various shares in the Company without consideration or just cause, thereby increasing the defendant directors' ownership and stake in the defendant corporation, which actions would constitute a breach of fiduciary duty to the Company and the holders of such shares;

   f.     By failing to make public or provide adequate information about the Company, thereby resulting in a potential diminishment of the share trading value and/or impediments to trading by public shareholders, which would constitute a breach of fiduciary duty;

g.      By failing to maintain sufficient or timely public information as required by the SEC or otherwise about Hiko Bell; thereby impairing the ability of public shareholders to avail themselves of Rule 144 to complete trading transactions and by general impairment of the trading market and depriving shareholders of sufficient public information to make informed investment decisions, all of which would constitute a breach of fiduciary duty;

h.      By failing to make current SEC filings which would subject the Company to the risk of fines, disciplinary actions, trading suspension or dissolution, all of which constitutes a violation of fiduciary duty to shareholders and the Company; and

i.      By failing to adequately acquire and develop corporate assets when corporate opportunities were available, or to make reasonable efforts to secure funding for the development of corporate assets, all of which constitute a breach of fiduciary duty to shareholders.

55.     As a separate and distinct breach of fiduciary duty, the individual named defendants acting in their capacity as directors attempted to conceal such actions and omissions as described by this cause of action, which concealment constitutes a separate and distinct breach of fiduciary duty.

56.     The breach of fiduciary duties, as alleged herein, was the direct and proximate cause of damages to the Company and to the non-affiliated shareholders.

57.     The Company should be entitled to recover damages under this cause of action against the individual named directors in an amount subsequently, together with punitive damages, all as determined at trial.

58.     Plaintiffs reserve the right to amend or supplement this cause of action as further discovery is completed.

## FOURTH CAUSE OF ACTION

### (Misfeasance/Negligence/Concealment)

59.     Plaintiffs replead and incorporate by this reference paragraphs 1 through 17 of the Parties and Jurisdictional allegations, paragraphs 18 through 34 of the General Factual Allegations and paragraphs 35 through 45 of the First Cause of Action and paragraphs 46 through 51 of the Second Cause of Action and paragraphs 52 through 58 of the Third Cause of Action as if fully set-out herein.

60.     In addition to the fiduciary duty owed by its directors to Hiko Bell and the public shareholders, the directors are subject to a reasonable duty of due care and diligence in the exercise and discharge of their duties.

61.     A violation, either through act or omission, of a reasonable standard of care by corporate directors constitutes a tort of negligence and misfeasance in the discharge of corporate duty.

62.     The specific alleged wrongful acts or omissions under paragraphs 54 to 55 in the preceding cause of action related to fiduciary duty would likewise constitute a breach of the negligence standards by the named individual defendants and constitute misfeasance.

63.     As a direct and proximate result of such negligent conduct and misfeasance in office, Hiko Bell and its public shareholders have incurred and will continue to incur damages, as may be subsequently proven.

64.     In addition, the failure to observe corporate formalities and do properly and fully file SEC filings constitutes negligent omissions on the part of management.

65.     The individual defendants attempted to hide and conceal such acts or omissions and misfeasance in office, and such concealment constitutes a separate and distinct cause of action and the extension of any applicable statute of limitations to a period of reasonable discovery.

66.     Plaintiffs reserve the right to amend or supplement this cause of action as further discovery is completed.

WHEREFORE, plaintiffs pray for judgment in favor of the Company, Hiko Bell, and against each of the defendants jointly and severally as follows:

1.     Under all causes of action for actual damages for harm to the Company and the Company's public shareholders as may be subsequently determined by the trier of fact;

2.     As to each individual defendant, jointly and severally, under the Second and Third Causes of Action for exemplary or punitive damages in such amount as the trier of fact may deem just and equitable in the premises, but in all events double the actual damages that are prayed for by the plaintiffs;

3.     For all of plaintiffs' costs of court and attorney fees as allowed by statute or Utah law;

4.     For injunctive relief restraining and forbidding the present directors from engaging in any of the wrongful actions or omissions found by this court pursuant to this action and requiring them to file timely and complete disclosure reports under the federal and state securities laws; and

5.     For such other and further relief as the Court may find just and equitable to the premises.

Dated this __3/st__ day of August, 2006.

## VERIFICIATIONS

Mr. Roger Landress, who being first duly sworn, does hereby represent under oath,

personally, that the foregoing factual allegations are true and correct to the best of his

knowledge, except for any matters which may be represented upon information and belief.

Dated this _21st_ day of _August_ , 2006.

_Roger Landress_
Roger Landress

STATE OF TEXAS              )
                           :ss.
COUNTY OF _Brewster_ )

On the _21st_ day of _August_ , 2006, Roger Landress personally
appeared before me, a Notary Public, and signed the foregoing Verified Shareholders' Derivative
Complaint in my presence.

LAWANNA LENNINGTON
Notary Public, State of Texas
My Commission Expires
December 15, 2008

_Lawanna Lennington_
NOTARY PUBLIC

My Commission Expires:
_12-15-2008_

Residing at: _100 W Avenue E_
_Alpine, Tx 79830_

Mr. Bailey Landress, who being first duly sworn, does hereby represent under oath that he is the President of Texas Sabal, Inc. and, in such capacity, that the foregoing factual allegations are true and correct to the best of his knowledge, except for any matters which may be represented upon information and belief.

Dated this _21_ day of _August_, 2006.

_Bailey Landress_
Bailey Landress

STATE OF TEXAS        )
                      :ss.
COUNTY OF _Brewster_  )

On the _21st_ day of _August_____, 2006, Bailey Landress personally and as President of Texas Sabal, Inc., appeared before me, a Notary Public, and signed the foregoing Verified Shareholders' Derivative Complaint in my presence.

LAWANNA LENNINGTON
Notary Public, State of Texas
My Commission Expires
December 15, 2008

_Lawanna Lennington_
NOTARY PUBLIC

My Commission Expires:
_12-15-2008_

Residing at: _108 W Avenue B_
_Alpine, Tx 79831_

Mr. William Powell, who being first duly sworn, does hereby represent under oath,

personally, that the foregoing factual allegations are true and correct to the best of his

knowledge, except for any matters which may be represented upon information and belief.

Dated this 2 2 day of A UG UST, 2006.

_William Powell_
William Powell

STATE OF NEW YORK    )
                         :ss.
COUNTY OF Westchester

On the 2 2 day of August _____, 2006, William Powell personally and
as a shareholder of Hiko Bell Mining & Oil Co., Inc. appeared before me, a Notary Public, and
signed the foregoing Verified Shareholders' Derivative Complaint in my presence.

_____
NOTARY PUBLIC

My Commission Expires:                           Residing at: CROSS RIVER, N.Y.

STUART FELDMAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01FE5023008
QUALIFIED IN WESTCHESTER COUNTY
COMMISSION EXPIRES JANUARY 24, 20 1 0

## JURY TRIAL DEMAND

Plaintiffs hereby request a jury trial of the foregoing causes of action to the maximum

extent allowed by law and herewith tender the required Jury Trial Fee.

_Julian D. Jensen_
Julian D. Jensen
Attorney for Plaintiff

_Nathan D. Miller_
Nathan D. Miller
Attorney for Plaintiff

N:\yjohn\Mc\der\vativeCompAug1706.701.doc



LAW OFFICES
## JENSEN, DUFFIN & DIBB, LLP
311 SOUTH STATE STREET
SUITE 380
SALT LAKE CITY, UTAH 84111

JULIAN D. JENSEN, P.C.
DANIEL O. DUFFIN, P.C.
BRUCE L. DIBB, P.C.

TELEPHONE
(801) 531-6600
TELECOPIER
(801) 521-3731
E-Mail: jdcdj@aros.net

June 20, 2006

Jeremy O. Evans, Esq.
Hunstman, Evans, Christensen & Lofgren, PLLC
3995 South 700 East, Suite 400
Salt Lake City, Utah 84107

Re:    Landress et al. v. Hiko Bell

Dear Mr. Evans:

Thank you for your letter of May 19, 2006. Respectfully, our office still takes the position that there is no real or substantive dispute as to the validity of Mr. Roger Landress' shares and that the continued emphasis by your client upon this issue is simply an attempt to avoid addressing, in a meaningful manner, the serious corporate governance and security law issues raised in my earlier letters to your client and your office.

You mentioned in your last letter that you had apparently not received the enclosures referenced concerning the letter to me from Mr. Bob Sather, which I think makes it absolutely and unmistakably clear that there was a transfer of all interest for valid consideration of the shares presently owned and asserted by Roger Landress. I have also enclosed the additional material received from Mr. Sather which was referenced in my earlier letter.

As to the core issues of the misfeasances, omissions, fraudulent transfers and breach of fiduciary duty by your clients in the management of Hiko Bell, I would simply point out that the draft shareholder derivative complaint sent to you with our last letter of May 16, 2006 would simply be expanded to include Texas Sabal, Inc. or other joint plaintiffs with Mr. Landress, which would clearly obviate the arguments that you are raising as to the validity of the plaintiff's representative capacity. I hope with this clarification, we could move beyond your client's continued procedural delays and address the substance of the matters at hand and have them respond specifically to the proposal contained in our May 16, 2006 letter. In all events, we wish to remind you that we regard the May 16, 2006 letter as a complete and sufficient demand letter and request for remedial action as outlined by Utah Code Annot. §16-10a-740(3)(a).

Notwithstanding the sending of this letter, our office reserves objections and defenses as to whether the foregoing Utah Code procedural section is applicable to a

Jeremy O. Evans, Esq.
June 20, 2006
Page 2

federal derivative action, in any event, and certainly it should not have application to any derivative action where there is ongoing damage and loss to the corporation.

Nonetheless, we deem that our letter to your office concerning Hiko Bell of May 16th constituted a sufficient notice under this statutory provision. Accordingly, we believe that the 90-day period before filing an action, if applicable at all, commenced to run on May 16, 2006, and that we will go ahead and file a substantially similar form of the derivative shareholder complaint which was earlier sent to your office 90 days after such date if a resolution is not reached. In the interim, we would hope and expect that your client would substantively respond to the proposal of settlement and remediation contained in our May 16th letter so that such litigation would not be necessary for all parties concerned.

Thank you for your consideration of this reminder letter.

Sincerely,

Julian D. Jensen
Attorney at Law

Enclosures

cc:     Roger Landress

JDJ/aw

IJOEDispute2.doc

LAW OFFICES

# JENSEN, DUFFIN & DIBB, LLP

311 SOUTH STATE STREET
SUITE 380
SALT LAKE CITY, UTAH 84111

JULIAN D. JENSEN, P.C.
DANIEL O. DUFFIN, P.C.
BRUCE L. DIBB, P.C.

TELEPHONE
(801) 531-6600
TELECOPIER
(801) 521-3731
E-Mail: jdcdj@aros.net

April 20, 2006

Mr. Craig Caldwell, President
Hiko Bell Mining & Oil Co., Inc.
P.O. Box 1845
1635 East 1500 South
Vernal, Utah 84078

Re:   Shareholder Demand for Remedial Action

Dear Mr. Caldwell:

As I am sure you are aware, our office represents Mr. Roger Landress and various associated minority shareholders who are deeply concerned about the direction, viability and continued welfare of Hiko Bell Mining & Oil Co., Inc. (hereafter the "Company" or "Hiko Bell"), as well as certain improper transactions concerning the Company.

In accordance with the Utah Code Annot. §16-10a-740(3)(a) et. seq., the minority shareholder group are going to outline their general grievances and claims against existing management by this letter of their legal counsel. It appears to the minority shareholder group that appropriate cure and remediation of these wrongful acts and omissions are virtually impossible by existing management due to the substantial sums of money that would be required to be returned to the treasury, the numerous SEC filings correcting past omissions and failures to file, and the correcting of various other long standing wrongful practices by management. While the statute generally affords management ninety (90) days to remediate these problems before a derivative action can be brought, the minority shareholders fully anticipate that you will either reject taking suitable actions or you will accept the alternative resolution outlined below by the minority shareholders within the time allowed. Further, the minority shareholders do not, by writing this letter, waive their position or rights that the present actions or omissions of management are causing irreparable present damage to Hiko Bell which would otherwise excuse the waiting of the ninety (90) day period before a derivative action may be commenced.

To come directly to the point, what the minority shareholder group is asking of present management is to graciously step down from your management position and allow Mr. Landress and affiliated parties to propose a slate of three new directors to be elected to manage the Company, together with some adjustments to shares and transactions detailed below. We believe that these actions would allow the shareholders to make an ultimate determination of management for the Company by being allowed to propose and vote upon alternative Board Members, while at the same time ensuring a new direction and energy in the management of the

Mr. Craig Caldwell, President
Hiko Bell Mining & Oil Co., Inc.
April 20, 2006
Page 2

Company. In exchange for your agreement and willingness to voluntarily engage in this resignation and other specific adjustments set-out below, all parties affiliated with Mr. Landress would agree not to bring any shareholder derivative suit against you, as the present management of the Company, or individual actions arising out of your past history and management of the Company.

While it is not the purpose of this letter to go through an exhaustive bill of particulars of various transactions and occurrences within or by the Company and its present management which we think were wrongful and could justify such an action, Mr. Landress has asked us to enclose a draft proposed shareholder derivative action which will be filed in substantially the form presented against present management in the event that an accommodation cannot be reached as outlined in this letter.

In brief summary, the most significant of these errors or omissions on the part of current management would include:

1.    Transfer of Company assets without adequate consideration;

2.    Issuance of Hiko Bell stock without adequate consideration;

3.    Issuance of stock without sufficient public information;

4.    Insider dealing and trades with both shares and company assets without independent review or vote;

5.    Failure to timely and/or accurately file required SEC reports, which acts or omissions not only lay the basis for trading in the Company's securities without adequate information or disclosure, but impaired the ability of restricted stockholders to sell under Rule 144;

6.    Failure to make notice filings concerning major events or contracts entered into by the Company as required by the SEC;

7.    Historical failure to timely hold shareholder meetings or provide shareholder information;

8.    Failure to recognize stock exchanges between shareholders for the Company, failure to count shares for voting purposes and attempts to cancel outstanding shares without cause; and

9.    Concealment of one or more of the foregoing transactions or omissions.

Mr. Craig Caldwell, President
Hiko Bell Mining & Oil Co., Inc.
April 20, 2006
Page 3

As we are sure you are aware, each of the foregoing items, as proven, would constitute a violation of Section 10b and Rule 10b-5 of the Securities and Exchange Act of 1934; as well as various common law standards such as fraud, breach of fiduciary duty and negligence on the part of current management. Because this is an ongoing and repeated pattern of activity of the Company, we do not believe that it can be cured simply by a representation or promise not to engage in such future acts, but can only be cured by the agreement of present management to step down and allow the Company to be managed by a new slate of directors who will appoint new officers and attempt to promptly remedy the many historic wrongful acts or omissions, as detailed above in the enclosed draft complaint. We are also asking for certain rescissions and adjustments as outlined below.

What the minority shareholders are specifically proposing is as follows:

1. The present Board of Directors would announce their resignation through the appropriate SEC filings effective upon a shareholder meeting to be called within the next 60 days to elect a new Board of Directors;

2. The existing Board would covenant and agree not to run for office as directors in the future, nor to nominate anyone acting under their direction, authority or control for such positions;

3. Present management would announce a new slate of director nominees as appointed by the minority shareholder group and consisting of Roger Landress, Robert Sather and Lynn Croas to be the principal candidates for the three directorships, with allowance for independent nomination and votes in a proxy solicitation. The existing Board would file required SEC notices;

4. The present approximate 2.5 acre parcel conveyed to Blue Bell would be rescinded and returned to Hiko Bell, or equivalent value paid into the treasury;

5. Funds received in the settlement of the Hiko Bell v. Carton litigation would be accounted for and returned to the Hiko Bell treasury as necessary;

6. A total of 2.65 million management shares, recently issued, would be returned as treasury shares;

7. The existing management group would make available, immediately upon acceptance of the terms of this resolution, to the new nominees all books and records of the Company, including any and all writings and other information which exists as to all transactions and contracts, whether publicly announced or not, over the past 10 years; and including those which are still executory or pending;

Mr. Craig Caldwell, President
Hiko Bell Mining & Oil Co., Inc.
April 20, 2006
Page 4

       8.    The existing management would immediately agree, upon written acceptance of the terms of this proposal, not to engage in any material transfer of assets, leases, issuance of stock, borrowing or other reorganization or other like material activities not in the ordinary course of business, or as defined by this demand with regard to the Company pending the shareholder election; and

       9.    In return, the minority shareholder group, or anyone acting through their direction, authority or control, would agree not to pursue any legal, administrative or other claims against the prior management for any wrongful act or omissions, and specifically that they would not file and pursue the enclosed shareholder derivative action.

The foregoing offer and proposal will remain open for acceptance for a period of twenty (20) days from the date of this letter. Should you not accept the terms of this proposal in writing within such period, our office has been instructed to proceed with filing and prosecuting a shareholder derivative action in substantially the form enclosed with this letter.

May we thank you in advance for your immediate attention to these issues.

Sincerely,

Julian D. Jensen
Attorney at Law

Enclosure

cc:   Mr. Roger Landress

JDJ/aw

Hiko ShareholderDerivativeActionDemand Letter

≈JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)   PLAINTIFFS | DEFENDANTS |
|---|---|
| Roger Landress; Texas Sabal, Inc. and William Powell | Hiko Bell Mining & Oil Co.; Craig Caldwell, James C. Caldwell and Robert E. Covington |

| **(b)**  County of Residence of First Listed Plaintiff   Brewster County, TX | County of Residence of First Listed Defendant    Uintah County, UT |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| **(c)**  Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Jensen, Duffin & Dibb, LLP, Julian D. Jensen, 311 S. State St. Ste. 380, Salt Lake City, Utah 84111 (801) 531-6600 | Huntsman, Evans, Christensen & Lofgren, PLLC Jeremy O. Evans, 3995 S 700 E, Ste. 400; SLC, UT |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity **(alternative)** (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:   shareholder derivative suit 10b-5 and fiduciary violations

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 75,000+ | CHECK YES only if demanded in complaint: JURY DEMAND:  ☒ Yes  ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions): | JUDGE | DOCKET NUMBER |
|---|---|---|---|

DATE   8/31/2006

SIGNATURE OF ATTORNEY OF RECORD   Julian D. Jensen

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

Judge David Sam
DECK TYPE: Civil
DATE STAMP: 08/31/2006 @ 14:11:53
CASE NUMBER:  2:06CV00734  DS